# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

BRIAN L. ANDERSON,

      Petitioner,    :        Case No. 2:25-cv-00459

  - vs -                       Chief Judge Sarah D. Morrison
                           Magistrate Judge Michael R. Merz

JAY FORSHEY, WARDEN, Noble
  Correctional Institution,

                      :
      Respondent.

## REPORT AND RECOMMENDATIONS

This is an action for a writ of habeas corpus; brought *pro se by* Petitioner Brian Anderson pursuant to 28 U.S.C. § 2254. He seeks relief from his convictions for drug and firearms offenses in the Monroe County Court of Common Pleas. The case is ripe for decision on the Petition (ECF No. 3), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 13).

**Litigation History**

On July 15, 2021, Petitioner was indicted for unlawful possession of dangerous ordnance in violation of Ohio Revised Code § 2923.17(A), and having a weapon while under disability in violation of Ohio Revised Code § 2923.13(A)(3)(Indictment, State Court Record, ECF No. 10, Ex.

1

1). This original indictment contained a drug offense count which was replaced August 19, 2021, when he was indicted for aggravated possession of drugs in violation of Ohio Revised Code § 2925.11, a second-degree felony due to the amount of methamphetamine involved, 25.89 grams (more than five times the bulk amount of three grams). *Id.* at Ex. 3.

After denial of motions to suppress evidence alleged to have been unconstitutionally seized, the case was tried to a jury which convicted Petitioner on all three counts. *Id.* at Ex. 12. He was then sentenced to a term of imprisonment of six to nine years. He appealed to the Ohio Court of Appeals for the Seventh District which affirmed. *State v. Anderson*, 211 N.E.3d 779 (Ohio App. 7th Dist. Mar. 23, 2023). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Anderson*, 170 Ohio St.3d 1493 (Jul. 18, 2023).

On April 10, 2023, Petitioner filed *pro se* a motion for reconsideration of his appeal pursuant to Ohio App. R. 26(A) which the Seventh District denied. *State v. Anderson*, 2023 WL 3561395. Subsequently, Petitioner filed an Application for Reopening under Ohio R. App. P. 26(B) which the Seventh District also denied. *State v. Anderson*, 2023 WL 3561395.

After a number of other post-judgment actions in the Ohio courts were unsuccessful, Anderson filed his Petition in this case on April 18, 2025.[1] Anderson pleads the following grounds for relief:

> **Ground One**: Petitioner's rights under the 4th, 5th & 14th Amendments were violated by the Trial Court's failure to Suppress Evidence.
>
> **Supporting Facts:** The Evidence was located and seized after Police gained access under false pretenses, alleging a welfare check that, if real, would have ended prior to the discovery and Seizure of the evidence.

---

[1] The Petition was not docketed until April 29, 2025, but had been deposited in the prison mail system on the earlier date.

>**Ground Two**: Petitioner's convictions are not Supported by Sufficient Evidence.
>
>**Supporting Facts**: State failed to submit evidence Sufficient to prove "operability" as required by Ohio Law, or that the shotgun was the property or Possession of the Petitioner rather than that of the car's owner and operator.

(Petition, ECF No. 3).

# Analysis

**Ground One: Failure to Suppress Unconstitutionally Seized Evidence**

In his First Ground for Relief, Petitioner asserts the Ohio courts violated his Fourth, Fifth, and Fourteenth Amendment rights by failing and refusing to suppress certain evidence.

Although Anderson litigated both Fourth and Fifth Amendment claims in the trial court and on direct appeal to the Seventh District, he carried forward only the Fifth Amendment claim to the Ohio Supreme Court (Compare Appellant's Brief, State Court Record, ECF No. 10, Ex. 15 with Memorandum in Support of Jurisdiction, *Id.* at Ex. 21, PageID 207). Although he mentions the Fifth Amendment in his First Ground for Relief in this Court, he does not argue that claim at all, but confines his argument to the Fourth Amendment. This Report will treat the Fifth Amendment claim as abandoned and analyze only the Fourth Amendment claim.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an

3

unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

In *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013), the Sixth Circuit held an evidentiary hearing in the state court was not required by due process and followed its prior conclusion that "opportunity means opportunity . . . the state court need do no more than 'take cognizance of the constitutional claim and render a decision in light thereof." *Id.* at 638, *quoting Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).

> Consistent with *Moore* and with two of the three votes in *Bradley*, we make clear that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.

*Id.* at 639-40.

Respondent asserts merits review of the Fourth Amendment claim is barred in this case by the Supreme Court's decision in *Stone*. Petitioner responds that Respondent has misread *Stone* (Traverse, ECF No. 13, PageID 970-73). He relies on *Withrow v. Williams,* 507 U.S. 680 (1993),

4

for the proposition that *Stone* does not deprive federal courts of jurisdiction over Fourth Amendment claims, but only decides as a matter of equitable discretion that "the court ought not to entertain them [Fourth Amendment claims] when the petitioner has already had an opportunity to litigate them fully and fairly." 507 U.S. at 718. Petitioner reads *Stone* as "allow[ing habeas] relief while making it discretionary rather [th]an mandatory, 'where the State· has provided an opportunity for full and fair litigation of a Fourth Amendment claim.'" *Id.* at PageID 972. He also read *Stone* as making habeas relief mandatory when the state courts have not provided a full and fair opportunity to litigate the claim. *Id.*

> Petitioner provides an additional reading of *Stone* to supports his position:
>
> > discretionary relief would still [be] available under the plain and unambiguous language of *Stone* had the Petitioner received a full and fair opportunity to litigate his claim in the state court, where the state court's decision violates federal law or involves an unreasonable application of federal law as defined by the United States Supreme Court.

*Id.*

Petitioner's reading of *Stone* is not correct. In *Stone* the Supreme Court exercised its own equitable discretion on a national basis to preclude habeas consideration of Fourth Amendment claims in the District Courts if the state court opportunity to litigate had been full and fair; it did not confer discretion on the District Courts to hear those claims. Sixth Circuit cases which have followed *Stone* have made that reading clear; Petitioner cites no case in which the Sixth Circuit has held *Stone* confers discretion on the District Courts to hear Fourth Amendment claims.

Going to the merits of the Fourth Amendment claim, Petitioner argues bodycam footage shows the searching police officer lied "about the shotgun having been in plain sight." *Id.* at PageID 973. However, the bodycam footage has not been made part of the State Court Record

5

before this Court[2]. It was part of the appellate record and the Seventh District viewed it as is evident from its opinion. Regarding visibility of the shotgun, the court found:

> {¶7} When the door opened, the deputy viewed a sawed-off shotgun between the passenger seat and the passenger door. He could see it violated the law as a dangerous ordnance (a shotgun with less than 18 inches of barrel or less than 26 inches in overall length). (Supp.Tr. 12-13). The shotgun was within easy access of Appellant. (Supp.Tr. 13-14). While Appellant stepped from the car, the deputy asked if the gun was loaded. From the deputy's next statement on the body cam, it seems Appellant said it was not loaded (and the deputy testified at trial that Appellant said it was not loaded).

*State v. Anderson, supra.* If the body cam showed the officer was lying, it would have been in Petitioner's interest to call that contradiction to the attention of the Court of Appeals, but the quoted finding does not suggest that happened.

Petitioner asserts the state court process was not full and fair because he was not allowed to present the transcript of his preliminary hearing that occurred in municipal court (Traverse, ECF No. 13, PageID 974-75). He gives no record reference to show how this preclusion occurred. The undersigned has read the transcript of the suppression hearing (ECF No. 10-1) and finds no place where the preliminary hearing transcript was offered into evidence. In any event, Petitioner has not shown any way in which the exclusion of that transcript made a difference to the outcome; his statement that it did is completely uncorroborated.

Petitioner argues that the term "occupied structure" in Ohio Revised Code § 2909.0l(C) be interpreted to cover this case. In interpreting a statute a court should:

1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then

---

[2] It is uncommon for the State Court Record filed in habeas cases to include trial court exhibits because they are rarely needed to decide the case and their storage, particularly guns and drugs, would create logistical difficulties for the Court.

    2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. It is difficult to imagine what possible purpose the General Assembly could have had in mind that would support applying the term "occupied structure" to an unmodified car pulled to the side of the road to accommodate the drug-induced stupor of its occupants. In any event Petitioner cites no Ohio court which has adopted such an extreme interpretation.

Because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, this Court may not reach the merits of that claim. Petitioner's First Ground for Relief should be dismissed.

**Ground Two: Insufficient Evidence**

In his Second Ground for Relief, Petitioner asserts his conviction is not supported by sufficient evidence. He claims there was insufficient evidence of operability of the shotgun, of his ownership of it, or of his possession of it.

On direct appeal, Petitioner claimed both that there was insufficient evidence and that the convictions related to the firearm were against the manifest weight of the evidence. In this Court Anderson pleads only the insufficiency claim which is appropriate because a manifest weight claim is not cognizable in habeas corpus. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v.*

*Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). Petitioner is correct that this law was clearly established at the time of his direct appeal. In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

8

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

9

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner presented his claims regarding the sufficiency and weight of the evidence together as his second assignment of error. The Seventh District decided the sufficiency claim as follows:

> ¶45} Appellant's second assignment addresses two different legal doctrines, contending:
>
>> "APPELLANT'S CONVICTIONS FOR UNLAWFUL POSSESSION OF A FIREARM AND POSSESSION OF A FIREARM UNDER A DISABILITY ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> {¶46} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if taken as true. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, ¶ 79, 82 (2002); *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring). In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether some rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).
>
> {¶47} The elements of having a weapon while under disability are to "knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.13(A)(3) ("[u]nless relieved from disability"), (B) (third-degree felony). The parties stipulated Appellant was

under indictment for felony possession of drugs in Summit County at the time of his arrest in this case. (Tr. 4, 104, 176).

{¶48} The elements of unlawful possession of a dangerous ordnance are to "knowingly acquire, have, carry, or use any dangerous ordnance." R.C. 2923.17(A), (D) (fifth-degree felony). The definition of dangerous ordnance includes a "sawed-off firearm." R.C. 2923.11(K)(1). *See also* R.C. 2923.11(L)(5) (excluding "a dangerous ordnance that is inoperable or inert and cannot readily be rendered operable or activated, and that is kept as a trophy, souvenir, curio, or museum piece"). A sawed-off firearm is "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall." R.C. 2923.11(F).

{¶49} In the first part of this assignment of error, Appellant contests whether the state sufficiently demonstrated the gun was operable. He claims it was mere speculation to find the weapon could have fired a live round. Without claiming there was supporting evidence or suggesting this was the case here, Appellant provides an example situation, claiming a gun could contain a firing pin from a different brand of gun so that it appears to be operable during a dry-fire but would not precisely align to fire a live round.

{¶50} A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant * * * includ[ing] an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(A) (applicable to R.C. 2923.11 to 2923.24), (B)(1). Clearly, an unloaded firearm meets the definition of a firearm, and Appellant does not argue otherwise.

{¶51} "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). Thus, when a gun is not recovered, the state can use circumstantial evidence of operability. *See State v. Murphy*, 49 Ohio St.3d 206, 209, 551 N.E.2d 932 (1990) ("To require the state to produce the actual firearm or empirical evidence would frustrate the intent of the General Assembly."). The statutory reference to circumstantial evidence is not limited to cases where a gun was never recovered; rather, it generally applies in all cases involving the definition of a

11

firearm. *See* R.C. 2923.11 (definitions as used in R.C. 2923.11 to 2923.24). Therefore, direct evidence through the test firing of a live round is not legally mandated, especially where to do so would be considered unsafe. *See, e.g., State v. Coleman*, 2d Dist. Montgomery No. 27702, 2018-Ohio-2214, 2018 WL 2938325, ¶ 37 (where the detective testified a test-fire would be dangerous); *State v. Tillman*, 6th Dist. Fulton No. F-11-006, 2012-Ohio-5265, 2012 WL 5508269, ¶ 15 (where an officer testified he unloaded the recovered gun, pulled the trigger, and observed the firing pin was working properly).

{¶52} Most notably, the Supreme Court has concluded that although operability (or capacity to be readily rendered operable) must be established by the state, "proof of the existence of a firearm may be based on lay testimony, and is not dependent on an empirical analysis of the gun." *Murphy*, 49 Ohio St.3d at 209, 551 N.E.2d 932, modifying *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989). We additionally point out the *Gaines* case relied on the former, stricter rule of circumstantial evidence. *Gaines*, 46 Ohio St.3d at 72, 545 N.E.2d 68, citing *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974). Currently, "when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenk*s, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), overruling *Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897. Rather, circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

{¶53} A shotgun with 12 inches of barrel (with a curve handle, adding only another 6 inches or so) was prominently located in the space between the front passenger seat and the passenger door. Appellant was in that passenger seat. Appellant told the deputy the gun was not loaded, without claiming it was inoperable. (Tr. 129, 136-137). Photographs of the gun (with and without a tape measure) were admitted into evidence. (St. Ex. 4 & 5). As the deputy explained, the shotgun had a trigger, a hammer, and an intact firing pin. He considered it unsafe to attempt to test fire the shotgun with a live round due to the sawed-off barrel (and what he believed was a pistol grip modification). He conducted a "dry fire," cocking the hammer, pulling the trigger, and noticing the firing pin released as expected.[4] (Tr. 135-137).

{¶54} In conducting our sufficiency review, all of the evidence is to be considered in the light most favorable to the prosecution,

12

> including reasonable inferences. *State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The question is merely whether "any" rational trier of fact could have found the contested elements were adequately established. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. Considering the totality of the circumstances, some rational juror could conclude the shotgun satisfied the definition of a firearm based upon the totality of the circumstances indicating operability.
>
> {¶55} **The remaining elements of the weapons offenses are not contested (emphasis sic)**, but we nevertheless observe the state presented sufficient evidence of all elements of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A) and having a weapon while under disability in violation of R.C. 2923.13(A)(3). Notably, a person can "have" an object through immediate physical possession or constructive possession, which involves dominion and control. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). "Ownership does not need to be proven and circumstantial evidence can be relied upon to establish constructive possession." *State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, 2019 WL 6358472, ¶ 16. A rational juror could find Appellant knowingly possessed a firearm, which was a type of dangerous ordnance due to the fact the shotgun's measurements placed it in the category of a sawed-off firearm.

*State v. Anderson, supra.*

As can readily be seen from the Seventh District's decision, the only element Petitioner challenged on direct appeal was the shotgun's operability. He did not challenge findings about possession or ownership. In fact, ownership is not an element of the two firearms offenses of which he was convicted, as the Seventh District held. His claim that there was insufficient evidence of the element of possession is procedurally defaulted because he did not submit it to the Seventh District and he has offered no excusing cause and prejudice. Before a petitioner may be heard on a claim, he must have presented it as a federal constitutional claim to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999).

Petitioner asserts the State failed to prove the shotgun was operable because the only

13

testimony was that the arresting officer dry-fired it once. His summary of the facts in evidence is accurate, but then he relies on cases finding operability and implicitly argues that, because the evidence here was not similar, it must be insufficient. However, the question of what is required to prove an element of a state crime is itself a question of state law and the Seventh District held that under the circumstances of this case, where firing a live round would have been too dangerous, dry-firing was sufficient.

Petitioner's Second Ground for Relief should be denied on the merits.

**Conclusion**

Based on the foregoing analysis the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 21, 2025.

s/ <i>Michael R. Merz</i><br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.